# Cyrus B. Manchester, Executor et al. *v.* Henry C. Mathewson.

A Court of equity is bound, equally with a Court of law, by the provisions of statutes of limitation.

An account relating only to transactions between parties as copartners in trade, is not an account which concerns trade and merchandize between merchant and merchant, within the letter or spirit of the statute of limitations.

A bill which charges that the defendant received the property and effects in question, on certain express and special trusts, and for certain specific purposes therein set forth, will be dismissed if complainant fails to establish his charge: and the Court will not, under such bill, inquire whether or not the evidence submitted would sustain or tend to sustain a bill otherwise framed, to enforce performance of an implied or resulting trust.

IN EQUITY.—A sufficient statement of this case is contained in the Court's opinion.

*Cozzens* and *Jenckes* for complainant, cited in the opening, *Leman* v. *Whitley*, (4 Russell, 423.) 1 Greenleaf's Cruise, (side) 370, 391, 394: *Birch* v. *Blagrave*, (Ambler, 264,) 2 Story's Eq. secs. 1197, 1255. And in the close cited *Coster* v. *Murray*, (5 John. Ch. 522.) 11 Maine, 1; 1 John. Ch. 582; 8 Simons, 335; 2 Blackford, 199.

*W. W. Updike, Potter* and *Ames* for defendant.—Accounts between partners are not between merchant and

merchant. Angell on Lim. sec. 164; *Codman, Ex.* v. *Rogers, Adm'r.* (10 Pick. 112.) *Forbes* v. *Skelton,* (8 Simons, 335.) If between merchants, must be current, mutual and reciprocal, Angell on Lim. sec. 160 (and note.) Rule in equity, as to statute of limitations. 2 Story's Eq. sec. 1520, (note 2.) Angell on Lim. sec. 174 *et Seq.* and sec. 238. *Coster* v. *Murray,* (20 John. 576.) There can be in this case no resulting trust. 2 Wh. and Tud. L. C. 593–5. 2 Sug. on Vend. 911–5. *Gale* v. *Coburn,* (18 Pick. 397.) *Brewer* v. *Hardy,* (22 Pick. 377.) *Dennison* v. *Goring,* (7 Barr, 175.) A trust cannot be shown by parole against covenants of warranty, *Rathbone* v. *Rathbone,* (6 Barb. Sup. Ct. 98.) *Squire et ux.* v. *Harder,* (1 Paige 494.) *Morgan et ux.* v. *Hayes,* (1 John. Ch. 339.) *Beach* v. *Packard,* (10 Verm. 96.) 9 G. and John. 80, 2 Green's Ch. 357. Defendant's answer, responsive to charges of misapplication and fraud, is evidence. 8 Paige 146; 6 Wend. 22; 1 Cowen, 711; 1 Freem. Ch. 546; 3 G. and John. 398; 2 M'Cord's Ch. 90. And as bearing upon the case of *Birch* v. *Blagrave,* (Ambler, 264,) counsel cited 2 J. and Walk. 568, 1 Daniel, 143, (4 Excheq. R. 448.)

STAPLES, C. J. Henry Mathewson, in his life time, filed his bill in equity against his son, Henry C. Mathewson, charging that in the year 1833, the complainant formed a copartnership with the respondent, and Albert H. Manchester and Ephraim S. Jackson, his sons-in-law, under the name of the Providence Coal Company, as dealers in Coals, by articles of agreement in writing; that said partners were equally interested in the profits and loss of the concern; that the agent was on the first of April in each year to take an account of

stock, and the situation of the company's affairs, and that the funds of the company were to be raised on the notes of the complainant, endorsed by said Manchester and Jackson; which articles of agreement, the complainant charged were in the possession of the respondent, and which he prayed the respondent might be required to produce.

The bill further charges that this co-partnership continued until the 23d day of April, 1836, when said Manchester and Jackson withdrew therefrom and relinquished their interest therein to the complainant and the respondent, who thenceforth continued the business as co-partners under the same name and style, until the     day of              , when the name was changed to that of "Henry C. Mathewson," under which name they continued doing business in company until the        day of July, 1840.

The bill further charges that the complainant, during the existence of the first co-partnership, advanced his notes to said firm to the amount of twenty thousand dollars, which, with other funds advanced by the complainant, formed the capital of said firm, which other sums are specified in the exhibit marked B, annexed to his bill, and amounting with interest up to the first day of January, 1850, to the sum of $4,302 99, and never withdrew any, except a trifling amount, therefrom.

That the respondent was the agent of said firm from its commencement until its close, but that he never rendered annual accounts, or any accounts, of his said agency, but withdrew large sums of money therefrom, amounting up to the first day of January, 1839, to the sum of $3165, without rendering any account thereof.

That about the first day of January, 1838, the complainant gave his note for $500 to the respondent, which he procured to be discounted at the Union Bank for the use of the firm, and when he afterwards paid it out of the funds of the firm, charged the complainant personally with the same.

That about the 16th day of February, 1838, the respondent took the sum of $445 00 from the trunk of the complainant at his request, to pay to Wm. Blodget & Co. on account against the complainant, and that he then subsequently charged to the complainant the amount so paid.

The bill further alleges, that at the dissolution of said firm, it was agreed between the complainant and respondent that the respondent should settle up the concerns of the firm and pay over to the complainant the sums he had advanced said concern, with one half the profits made by the same : and charges that the business of said concern, after said Manchester and Jackson withdrew from the same, was very profitable, and that he, the complainant, is entitled to one half part of the said profits.

The complainant also charges in his bill, that on the        day of March, 1834, he constituted the respondent his trustee, bailiff and receiver of certain real and personal property, bank stock, goods, chattels and evidences of debt, and monies, to be managed by said respondent, for the use and benefit of the complainant in and about certain, business transactions and affairs of the complainant, and that the respondent then undertook said trust and receivership and faithfully to administer said property and to account for the same to the complainant,

but that he hath converted a large part of the same to his own use, and that the principal items of said trust property are specified in the schedule annexed to said bill and marked C.

The bill further charges, that the respondent on the 17th day of March, 1846, rendered an account to the complainant, in which he blended together said co-partnership account and said trust account, which account is grossly erroneous, but that he has refused to render a just and true account in said premises.

The bill then prays that the respondent may answer upon oath and discover and make known "all and singular the matters aforesaid," and that as fully and particularly as if the same were again repeated and he distinctly interrogated thereto, and more especially that he discover and make known in manner aforesaid, certain matters particularly specified in fifteen interrogatories propounded to the respondent.

The bill also prays an account of the partnership property and effects, and a decree against the respondent for payment to the complainant of what shall be found due to him on taking said account: and also what shall be found due on said trust account, or that the said respondent may be decreed to pay to the orator the balance of said personal trust property, other than mortgages, and to re-convey said real estates to the orator, and to transfer to him said mortgages, or that the said mortgages be decreed to be cancelled and discharged, and that the respondent may be restrained and enjoined, by order and injunction, from all transfers and conveyances of said real estate and mortgages: that the said respondent may be ordered to bring into Court said co-

partnership articles, and all the books and papers that relate either to said co-partnership affairs, or said trust property, and that the orator may have such other and further relief, as the nature of the circumstances of this case may require, and to the Court shall seem meet.

The answer of the defendant admits the existence of a co-partnership between the respondent, complainant and Manchester and Jackson, from the 18th day of March, 1833, to the 23d of April, 1836, and denies the existence of any co-partnership between him and the complainant after the last named date.

It denies that there ever were any written articles of co-partnership executed between the parties, or any verbal agreement that the agent should on the first day of April in each year take an account of the stock and situation of the company's affairs, or that at the commencement of said firm it was agreed that the funds of the company should be raised on the notes of the complainant, endorsed by said Manchester and Jackson.

The answer of the defendant asserts that at the dissolution of said partnership, on the 23d day of April, 1836, it was agreed by the partners that he, the defendant, should take the claims and property of said firm and pay their debts, and that there were no partnership funds or profits to divide.

The answer of the defendant further admits, that during the existence of said co-partnership, said complainant gave certain notes which were endorsed by Manchester and Jackson, for the business capital of said firm, and denies that said complainant or his property ever paid, or was taken to pay, said notes, or any of them, and asserts that all that were paid during said co-

partnership were paid out of the funds of said co-partnership, and that the balance after said dissolution was paid by the respondent.

The answer of the defendant to the allegation of the complainant, that he advanced to said firm the sum of $4,302 99, as per schedule B, annexed to his bill of complaint, denies again the existence of any co-partnership between the respondent and the complainant, after the 23d day of April, 1836, and refers to schedule B, as showing that said advances are charged as having been made after said dissolution.

The defendant, in answer to the complainant's allegations in relation to his, complainant's, note at the Union Bank, for $500, says that if he did get it discounted, as is alleged, he did so for the benefit and at the request of the complainant, and paid over the proceeds to complainant, or according to his order, and when the same became due it was renewed for part, and that he, the respondent, paid it in instalments and with his own funds, and charged the same to the complainant, and that such payments and charges were known to the complainant at the time, and denies that complainant ever paid anything toward said note or on account of it.

In answer to complainant's allegations in relation to the item of $445, in said schedule B, claimed to have been taken from the trunk of the complainant, respondent answering, admits that he charged the complainant with the payment of said bills to William Blodget & Co., and that the complainant knew of such charge at the time, and he denies that he ever took said sum, or any part thereof, from said trunk, or from complainant in any manner.

And said answer asserts, in relation to said sum of $500 and said sum of $445, that the complainant admitted to him, in 1849, that he did not know about said charges against the respondent, and withdrew the same from his claim on the respondent as unfounded and incorrect.

And as to complainant's allegations in relation to the charge of advances to respondent of $200, under date of March 8, 1838; of $400, under date of February 13, 1839; of $175 36, under date of February 26, 1839; and of the further charge of $30, under same date, to pay interest on note at Phenix Bank, all making part of said schedule B, the defendant answering, asserts that on the 22d day of March, 1839, he and the complainant settled their accounts together, and that the complainant then gave the respondent his memorandum check for upwards of $1400, in balance for the same, which check is now lost, or mislaid, or was taken by complainant from the trunk of respondent: that after complainant presented his account to the respondent, in 1849, respondent pointed out these charges as made before and included in their settlement in 1839, and that thereupon said complainant withdrew said charges. And as to the first of said items, $200, respondent *denies* that complainant ever advanced the same to him, or any part of the same.

Said answer also asserts, that whenever the complainant delivered or paid money to the respondent, he, the complainant, always refused to have the same credited to him on respondent's books, and insisted upon having his, the respondent's, memorandum checks for the same, which the respondent gave him from time to time, and

Cyrus B. Manchester, Executor, et al. v. Henry C. Mathewson.

that at the said settlement between them, on the 22d day of March, 1839, the complainant produced said checks, which were included in the accounts between them, and settled at that time.

The respondent admits that he was agent of said co-partnership during its continuance, and up to the 23d day of April, 1836; denies that there was any obligation to render annual accounts on the first day of April in each year, or that he ever refused to render any account of said co-partnership to the complainant; admits that he withdrew from said firm the sum of $997 18, which he asserts was known to all the co-partners at the time the firm was dissolved, and asserts that all the concerns of said firm and partners, as between themselves, were finally settled at said dissolution, and that he, the respondent, received then all the assets, and assumed to pay all the debts of said concern, without account to his said partners, and denies the allegations of the complainant, in relation to any ageement or liability to account with him therefor.

As to the complainant's first charge in schedule C, of 20 shares in Phenix Bank, in March, 1834, the respondent answering, admits that he did, in the year 1834, receive from complainant a transfer of 20 shares in the capital stock of said bank, which then were worth about $16 per share; avers that he paid a valuable and adequate consideration for the same, and denies all or any trust of any kind or nature in relation to the same.

As to complainant's next charge in said schedule C. under date of March 22, 1838, being "a deed of estate on Pawtuxet street, worth $6,000," the respondent answering, admits that about 15th of March, 1838, the

complainant did execute to him a deed of said estate; that he did not pay any consideration for the same, but that the complainant conveyed the same to him of his own free will and gift, *without and clear of* any trust, and that he has always deemed and treated the same as his own, and that he purchased in 1843, a lot of land adjoining the same, which would be of much less value to him if he were not the owner of said lot deeded to him by the complainant.

The answer of the respondent admits that he did receive from the complainant, on the 15th day of May, 1841, a mortgage of certain lands and property in Providence, and on the 7th of June, 1841, a mortgage of a lot of land in Apponaug, and afterwards another mortgage of said lot in Apponaug, but denies that he received all or any of them as trustee, bailiff or receiver of the complainant or any other person, but as his own exclusive property, and avers that they were given to secure to him the payment of the sums therein named, to wit: the note to Thomas Henry for $1000, the sum of $5,567.49, amount of his account due him from the complainant, and also such further advances and payments as he should make to or on account of the complainant, with the interest thereon, which amounted in all to the sum of $19,311 51 on the 17th day of May, 1850, as appears by his account filed with his said answer, together with the check for $1400, dated May 22, 1839 : from which should be deducted respondent's note for $2000, given by him to Welcome Fenner, in January, 1846, if the complainant is the holder of the same, and such of his memorandum checks and notes as complainant now holds.

The answer denies that the respondent received said

mortgages and property as trustee, bailiff or receiver of the complainant in any sense whatever, or that any payments charged in his account were made with monies belonging to the complainant, or that there is anything due from the respondent to the complainant, except by notes or memorandum checks given to him by respondent since their settlement in 1839, and asserts that the complainant insisted on receiving notes and checks whenever he paid or delivered money to the respondent, and would not consent that the respondent should credit the same on his, the respondent's books.

As to the item in said schedule C, under date of May 3, 1842, of A. & W. Sprague's note, amounting to $1331 at the time of its alleged delivery to respondent, the answer denies that respondent received and retained said note, or the proceeds thereof, to his use and benefit, and denies that there is anything due from the respondent to the complainant on account of the same, and any trust of any kind in relation to the same, and asserts that if he ever received said note it was for the sole purpose of getting it discounted for the complainant and handing the proceeds over to complainant.

The answer admits that respondent did occupy a part, and afterwards the whole, of complainant's house on Hospital street, as charged in schedule B, and asserts that he did so at request of complainant, with the understanding that he should never be called on for rent; that he never was called on for rent till the filing of complainant's bill, and denies that he is liable for any rent for the same.

The answer insists that the account which the respondent rendered to the complainant on the 17th day of March, 1846, was correct as far as it goes.

At the March term of this Court, held 1853, Cyrus B. Manchester, executor of the last will and testament of Henry Mathewson, and the devisees under said will, filed their bill of review and supplement against said Henry C. Mathewson, alleging the decease of said Henry Mathewson after the taking of testimony on his part in said original bill, and before the trial of said bill, and the making and probate of said last will and testament, reviving and renewing the charges in said bill and charging in supplement thereto, that in May, 1839, the said testator paid $6000 at the High Street Bank for the uses of the coal business, in which the respondent was engaged, and in which the testator was a partner with him; and that the respondent used the same in said business and for other purposes as the trustee, bailiff and receiver of said testator, and that the respondent hath not accounted for the same.

The answer of the respondent to this bill of review and supplement, refers to his answer to the original bill, and insists upon the same as an answer to the bill of review and supplement.

As to the matter supplemental to the original bill, the respondent in his answer denies that the said testator, in 1839, paid $6000 at the High Street Bank, or any other sum for the uses of said coal business, or that he was co-partner with respondent in that or any other business in said year, or that he, said respondent, used the same in any such co-partnership, or as the trustee, bailiff or receiver of said testator, or that he was ever the bailiff, trustee or receiver of, or in any way liable to account with, said testator or his representatives, in relation to the same: and asserts that during the co-partnership

which existed between the respondent, Henry Mathewson, Albert H. Manchester and Ephraim Jackson, in the year 1834, there were sundry notes discounted by the High Street Bank, amounting in all to $9500, all signed by said Henry Mathewson, and came due before, and were unpaid upon the 26th of January, 1835; that on the 26th of January, 1835, said notes were taken up by a new note for $9500, signed by said Henry Mathewson, which was renewed from time to time until the 5th of February, when a new note at ninety days was given for the balance of principal, $7500, which fell due a few days after said partnership was dissolved, and that so much of the principal as was paid up to this time, and all the interest on said notes, was paid by the Providence Coal Company, and out of their own funds.

That after said partnership was dissolved, said note was renewed, and all the interest and partial payments made thereon by the respondent, out of his own funds, until the same was reduced to the sum of $6000, due on the 16th day of May, 1837.

That before said note became due, on said 16th day of May, the respondent and said testator had a settlement in relation to it, and said testator being indebted to the respondent in a sum nearly equal to said note, said testator agreed to pay said note in discharge of his said indebtedness, and that the respondent then gave him his, the respondent's, memorandum check for the amount, at the request of the testator, who insisted upon it, and refused to have credit given him for the same by the respondent on his books.

That thereafter, whenever said testator renewed said note, said respondent paid the interest on the said re-

newals and charged the same on his books to said testator, who knew the fact at the time, up to January, 1839.

That on the 22d day of March, 1839, the respondent and the testator had a full settlement of all matters between them, and that said testator then gave the respondent his memorandum check for between $1400 to $1500, which check was afterwards taken by the testator from the trunk of the respondent, without paying the same, and that the testator never made claim on respondent for said sum of $6000, or objected to respondent's claim for interest paid.

And that the testator, in May, 1839, paid said $6000 note by selling his stock in the High Street Bank. And for further defence against said claim of $6000, the respondent sets up the statute of limitations.

This cause was heard on the exhibits and proofs. The bill charges that Henry Mathewson, Henry C. Mathewson, Albert H. Manchester and Ephraim Jackson, entered into co-partnership in the coal business in the year 1833, and continued as partners in said business until the 23d day of April, 1836. This is admitted by the answer of the respondent.

The complainant alleges that at the dissolution of this firm, Henry Mathewson and Henry C. Mathewson carried on the same business as partners, under the same name at first, and subsequently under the name of Henry C. Mathewson, until the      day of July, 1840.

The answer of the respondent denies the existence of any co-partnership between Henry Mathewson and the respondent after April 23, 1836. In this particular it is

responsive to the bill, and instead of being disproved, stands corroborated by other proofs in the cause.

At the dissolution of said firm, the answer admits that the assets of the concern passed into the hands of the respondent; and it also admits that there has been no settlement of the affairs of the company, other than that the respondent asserts that he assumed the liabilities; and that it was agreed between the partners at the time that they had neither made or lost in the business. It was shown in proof that neither Manchester nor Jackson claimed anything for profits, but simply required to be guaranteed against the debts of the company, and that Henry Mathewson gave them his personal guaranty.

The capital stock of the company was raised on the individual notes of Henry Mathewson, given to the High Street Bank, and endorsed generally by Mathewson and Jackson, but in some instances by Welcome Fenner. It is shown that notes of this character for more than $20,000 were negotiated at that bank for this firm, but it is not shown that Henry Mathewson ever paid any part of said notes, excepting the sum of $6000, on the 22d of May, 1839, nor is it charged that he ever did. At the dissolution, the amount of these notes then outstanding, was $7500. The respondent asserts that he paid all that was paid of principal and interest between the 23d of April, 1836, and the 16th of May, 1837, out of his own funds, being $1500 of the principal, besides the interest; that the company paid out of their funds all that was paid thereon during said firm, to wit: upwards of $12,000 with the interest, and that after May 16, 1837, he, the respondent, paid all the interest that was paid thereon up to the payment of the principal in

March, 1839, and charged the same to the said Henry Mathewson, who subsequently accounted with and paid him the same.

The bare giving of these notes by Henry Mathewson, without showing that he paid them, would not authorize him to charge the firm with their amount. It is the usual custom where notes are advanced to form a capital, for the person to whom the notes are advanced, to make the payments on the same, and such payments could well be made in this case with the proceeds of the sales of the coal purchased with the proceeds of the notes. It would not require that the company should make profits, in order to take up such notes, unless it should be further shown that the stock of coals on hand was not reduced below $20,000, or that if not so reduced, it had not been purchased by other facilities. By the proofs in this case, Henry Mathewson never paid but $6000 toward the notes which he gave for the accommodation of this firm.

The statement of the respondent, in his answer, as to the mode in which this sum was repaid to said Henry Mathewson, does not appear to us responsive to the bill. But we do not deem it necessary to examine this point particularly, as the respondent has set up another bar to the claim, which we deem to be fully sustained, and that is the statute of limitations. Though this statute in its terms applies only to actions at law, Courts of Equity have always deemed themselves equally bound by its provisions.

The complainant insisted that this case is within the exception of the statute, being an account which concerns trade and merchandise between merchant and merchant.

Cyrus B. Manchester, Executor, et al. *v.* Henry C. Mathewson.

In an action at law, where the defendant pleads the statute of limitations in bar of the plaintiff's demand, the plaintiff may reply that the demand sued did concern trade or merchandise between merchant and merchant. This would raise the question whether it was or was not one of that class of demands to which the statute does not apply, and that would be the only issue between the parties. Evidence of a new promise within six years next before the commencement of the action would be wholly irrelevant to this issue. But if the plaintiff replied such a new promise, evidence that the demand sued did concern trade or merchandise between merchant and merchant, would be equally irrelevant, while the existence of mutual unsettled open accounts between the parties would, by the whole current of authorities, be proper and even conclusive evidence for the plaintiff.

In the first case, the plaintiff relies on a fact which, if true, shows that his claim is one of a class which was never within the provisions of the statute, to be barred by it, and which, if relied on, must be pleaded. (2 Saunders, 124.) In the other, the plaintiff insists that his claim is not within the provisions of the statute, although it is one of a class upon which the statute was intended to and does operate. At first it was doubtful whether the exception in favor of merchants extended beyond the action of account, but subsequent decisions have removed that doubt, and all actions on the case are now deemed to be embraced by it as well as account.

In the present case, the parties were not technically merchants, that is, persons trading beyond sea. But at any rate, the accounts now in issue, relate only to trans-

actions between themselves as partners. Their dealings together as partners, with persons beyond sea or out of the State, may perhaps entitle them, in respect to them, to be called merchants, and accounts between the firm and their correspondents abroad may be accounted merchants' accounts. But it is very different where the accounts are between themselves as partners. There was a good reason for excepting dealings between parties resident in foreign countries, and under different jurisdictions and governments, from the statute of limitations, but that does not apply to dealings between partners and partnership accounts.

We do not think that the accounts in question are within the letter or spirit of the exception in the statute.

On the part of the complainants, it was also contended, that the accounts between the said Henry Mathewson and said Henry C. Mathewson are mutual, open and unsettled accounts, and were so admitted and acknowledged by said Henry C. within six years next before the filing of the original bill by said Henry Mathewson.

The answer of the respondent explicitly denies this allegation, and it is not established by the proof in the cause, in relation to any accounts or dealings between said parties prior to the 22d March, 1839. The answer admits that the said Henry holds memorandum checks and notes given in part payment of respondent's account against said Henry Mathewson, commencing on said 22d March, 1839. These may be proved in offset to said account.

It was claimed by the complainants that said Henry Mathewson made other advances to said firm, particularly enumerated in schedule B. annexed to said original bill.

On examination of the items in said schedule, it appears that the first item is the only one that bears date during the existence of the firm, to wit, before the 23d day of April, 1836. The remaining items may therefore be dismissed from consideration in this part of the case.

The first item, under date of January 1, 1834, is for the amount of Henry Mathewson's note at the Union Bank, received by respondent and afterwards charged by the respondent to said Henry Mathewson. The amount of the note was $500.

There is no proof in the cause that the respondent ever received the proceeds of said note when it was discounted, except what is admitted in the answer, and there it is stated hypothetically, if respondent received them he paid them over to said Henry Mathewson. It would not be right to deem such an admission as an absolute one, discharged of the assertion of payment over at the time, when the statement in the bill in a measure corroborates it, by admitting that the payment subsequently made was charged by the respondent to said Henry Mathewson at the time.

The other items in said schedule, being under dates after the dissolution of said partnership, cannot be considered as advances to said partnership. They may nevertheless be properly charged to the respondent, to be accounted for in this cause, if proved and substantiated.

The second item is for $445, charged as taken from the trunk of Henry Mathewson to pay bills to William Blodget & Co., which payment to said Blodget & Co.

is charged by the respondent to said Henry Mathewson. This is under date of Feb. 16, 1838.

The third item, under date of March 8, 1838, is for $200 advanced respondent by Henry Mathewson.

The answer of the defendant denies that he ever took the above sum of $445 or any part of it from said trunk, and that Henry Mathewson ever advanced him said sum of $200. There is no evidence in the cause establishing these items, and the denial of the respondent is responsive to this charge in the bill. They are therefore out of the case.

Nor has there been any evidence adduced, which tends to support the other items in said schedule. The next three items in it are for money advanced by Henry Mathewson to the respondent, one under date of Feb. 12, 1838, for $400, two under date of Feb. 26, 1838, one for $175, and one for $30, to pay interest at the Phenix Bank.

In relation to these, the respondent, in his answer, asserts that they were included in a settlement had between him and said Henry Mathewson on the 22d day of March, 1839.

That there was an account between the parties, is a necessary inference from the form of the first two items in this same schedule, in each of which Henry Mathewson complains of charges made by the respondent against him. Yet he has not produced that account, nor has he required the respondent to do so. And that there was a settlement between the same parties up to the 22d March, 1839, seems to be a natural inference from the fact in the case, that in May, 1841, Henry Mathewson gave the

respondent a mortgage to secure the amount due him on his account, commencing on the 22d March, 1839, and ending in May, 1841. As in relation to the last settlement in 1841, the respondent admits that he left outstanding in the hands of Henry Mathewson sundry memorandum checks and notes which ought to be credited to him against the amount secured by said mortgage, we might in the absence of proof suppose that the previous settlement was made in the same manner, if the account were produced and should be found to contain no credits to said Henry Mathewson of notes and memorandum checks dated before said settlement. But as no proof on this point has been submitted to us, and as the respondent relies on the statute of limitations as a bar to all the items in this schedule which bear date more than six years before the filing of the original bill, we are compelled to decide that it is a full and effective bar to all such claims, bearing date before the 22d day of March, 1839, and that such as bear date subsequent to that time may be proved in offset to the respondent's account.

The complainant, Henry Mathewson, charges in his bill, that in May, 1834, and afterward, he placed certain real estates and other property in the hands of the respondent, and executed certain mortgages to him, and constituted him his trustee, bailiff and receiver, to be by said respondent "managed, appropriated and disposed of for the use and benefit" of said Henry Mathewson "in and about certain business transactions and affairs" of said Henry Mathewson, and that said respondent received said estate, mortgages and other property, as the proper estates and property of said Henry Mathewson, and undertook and engaged with said Henry Mathewson to manage and appropriate the same accordingly, in the

liquidation and discharge of certain debts and claims against him, and making certain investments for him, and to render a just and true account thereof; and after making said appropriations and payments, to pay over the balance to said Henry Mathewson, and to reconvey said estates to said Henry Mathewson, and to cancel and discharge said mortgages; but that said respondent, instead of so applying and accounting for the same according to his undertaking and the legal obligation resulting from said conveyances, has misapplied the same with intent to injure said Henry Mathewson, which is a direct fraud on said Henry Mathewson.

The particulars of said trust property are enumerated in schedule C. annexed to the original bill.

As to the first item in schedule C. "to transfer of 20 shares in Phenix Bank to qualify him for a director," under date of March, 1834, the answer admits the conveyance to respondent, and denies all trusts in relation to the same, and avers that he paid a valuable and adequate consideration for the same. This is all the proof in relation to this item. It is not therefore established.

The second item is "a deed of estate on Pawtuxet street, worth $6000." It is admitted by the answer that Henry Mathewson on or about March 15, 1838, executed and delivered to the respondent a deed of warranty of the house on Pawtuxet street, then occupied by said Henry Mathewson, and that the respondent did not pay for the same the consideration named in said deed, or any consideration. It was shown that Henry Mathewson continued to reside there after the execution of said deed, that Henry C. Mathewson also resided there both at and after the execution of said deed, and finally re-

moved therefrom in consequence of some disagreement with said Henry Mathewson, not growing out of the title or claim of title to said estate; that said respondent left some of his property in said house, paid the taxes assessed on it, and made sundry alterations and repairs on the same, and purchased a lot adjoining for the more convenient occupation of the same. The respondent claims the estate as a gift from his father. The father and his representatives claim that it was conveyed on trust.

The deed is a common deed with full covenants of warranty, and the estate declared to be conveyed to the use of the respondent, his heirs and assigns. After the execution of this deed, to wit: on the 5th of May, 1841, Henry Mathewson executed and the respondent received a mortgage deed of this same estate among others, as security for a certain account then acknowledged to be due to said respondent, and for such future advances and payments as he should make to said Henry Mathewson.

The complainants contended that the deed of March, 1838, being a voluntary conveyance without consideration, the estate was to be used as the grantor in the deed should direct; and that there was a resulting trust in grantor arising from want of consideration, which may be proved outside the deed, and is to be inferred from the giving and receiving and mortgage of the same premises afterwards.

The respondent contended that the statute of frauds required all trusts to be declared in writing, but admitted that this did not reach resulting trusts; and insisted that there could be no resulting trust where a use was declared in the deed itself: that this was a gift of land

perfected by livery of seizin: that grantor is estopped by his covenants to claim a trust to himself. The bill sets up a special trust, but the counsel in argument, a resulting one. The mortgage was given to secure especially a debt due from grantor to grantee of deed, at date of deed. Creditors of grantor might claim, the deed being without consideration, that the grantee was trustee for them after payment of his own debt, and if the complainant or his representatives could set up a like trust, it must be in a bill framed for that purpose.

The bill claims that the conveyance of this estate was, with others, made upon a special trust. The respondent is specially interrogated whether this estate, with the others, was not conveyed to him "upon *the* trusts and for the uses and purposes above stated." The charge in the bill is, that the respondent, as trustee, bailiff and receiver of said estate and others, was to manage, appropriate and dispose of the same for the use and benefit of the grantor in and about certain business transactions and affairs of said Henry Mathewson; and that the respondent then undertook said trust and receivership and faithfully to administer and appropriate said property accordingly, and to account therefor to said Henry Mathewson. In answer to an interrogatory on this point, the respondent says that defendant has already answered what property he received from the plaintiff, when and how, and has denied and does deny, absolutely, that any of the same was ever delivered to him in trust, or for the uses and purposes stated in said bill, or for any other purpose than those stated in his answer. In the body of his answer, the respondent states, that the complainant conveyed the same (i. e. said estates) to

Cyrus B. Manchester, Executor, et al. *v.* Henry C. Mathewson.

the respondent, of his own free will and gift, without and clear of any trust of any kind or nature, and defendant has always since said deed dealt with and managed said estate as his, defendant's, own and exclusive property. This is the trust upon which the bill claims the conveyance to have been made, and it is this trust which he asks may be enforced. But he submits no proof of the existence of such a trust, and it is fully and absolutely denied by the respondent in his answer, which is in this respect responsive to the bill.

Whether, then, there be a resulting trust in the respondent, is not now the question made or to be tried. From the discussion had on this point, we exceedingly doubt whether such a trust could be inferred from a conveyance like this, though without consideration, the estate being limited to the use of the grantee, and his title protected by full covenants of warranty. Whether, too, on a bill to redeem this estate from the mortgage subsequently given, this deed, upon proper averments and proofs, may not be decreed to stand between the parties as security only for any debt then due from the grantor to the grantee, can better be determined when such a suit is brought on such relief prayed. Sufficient for this case, is it, that the complainants have not proved the estate to be held or the trusts set out in the bill, but that this is disproved by the respondent's answer.

Said schedule contains among other things three mortgage deeds given by said Henry Mathewson to the respondent. One dated 15th May, 1841, is of the Pawtuxet street estate, and several other lots of land in Providence, and certain articles of household furniture. The other two are of the same estate in Warwick, known

as the Philip Arnold estate, one dated June 7, 1841, and the other June 11, 1841, the second having been given to cover an interest which said Henry Mathewson acquired in said estate after the date of the first. These, it is charged in the bill, were given and received in trust for certain purposes, as therein set forth, and have been diverted from said trusts in fraud of Henry Mathewson.

The complainants exhibit no proof in support of this charge. There is no evidence produced which tends in the most remote manner to show, that these mortgages were given or received on any trust or for any other purpose than what appears on their face. The respondent on being specially interrogated whether he did not receive said mortgages upon the trusts alleged in said bill, absolutely denies that they were given or received upon any such trusts, or for any purpose other than as security for the debts therein named.

In this state of the proof, it seems unnecessary to inquire whether the complainants could engraft by parol on an instrument of this kind, a trust inconsistent with its express terms, and with the nature of the instrument itself.

There is the same deficiency of proof on the part of the complainants in relation to the following items in said schedule :

1839.
October.	To cash New-York money to be charged by you,........$30 00
1841.
May.	To cash to pay A. B. Thomas' bill against me,..........100 00
June 12.	To cash advanced to pay acceptance,....................300 00
July 21.	To cash to pay S. Y. Atwell on my account,.............200 00
August 24.	To cash advanced to pay for coal,.....................200 00
September 9. To cash advanced to pay freight on coal,................200 00

Cyrus B. Manchester, Executor, et al. *v.* Henry C. Mathewson.

1842.
May 2.     To cash received of Stanton Hazard for me,............ 25 00
  "        To cash advanced,................................... 26 00
October.   To rent received of Joseph Perrin,.................... 21 25
1843.
February 4.  To cash paid him for his note for $250 to S. Y. Atwell, Esq..250 00
       25.   To cash to pay John T. Pitman for copies of case,.......420 00
             To cash to pay messenger to carry papers to Washington,.100 00

There is no proof that the foregoing sums were ever paid or advanced to the respondent, much less that they were paid or advanced on the trusts set forth in the bill.

With respect to another item in said schedule, to wit:

1841.
June 10.   To cash to pay mortgage on Philip Arnold's estate,.......$360 00

the proof from said Arnold is, that said Henry Mathewson told him that the respondent paid the money to pay the mortgage aforesaid, and this is the only proof on this item.

The only remaining item on said schedule C. is,

1842.
May 2.  To A. & W. Sprague's note on demand with in-
                terest,...............................$1,250 00
        Interest due on same at time of delivery,...    81 00
                                                    ——————  $1,331 00

William Sprague, examined as a witness for the complainants, testified that A. & W. Sprague gave such a note to said Henry Mathewson, and subsequently took it up and gave the respondent two notes for it, one at ninety days and the other at four months; and it was shown that one of these notes was subsequently discounted for the respondent at the High street Bank, and the other at the Phenix Bank. The allegation of the delivery of this note to the respondent is met in the an-

Cyrus B. Manchester, Executor, et al. *v.* Henry C. Mathewson.

swer by his denial of any recollection in relation to the ,same. It is then proved that the note did pass into the hands of the respondent, and that he did have the same renewed in two notes, and those discounted at Bank. This is all.

But this is not sufficient to make out the complainant's allegations. It does not show that the respondent received it on the express specific trusts set out in the bill, although the proof may be sufficient to charge him with the amount received, either at law or in equity.

It seems to us that the complainants have failed in establishing their charge against the respondent of receiving the estates, mortgages and property described in schedule C. on the trusts, and for the purposes specifically set forth in the bill: in some instances failing in proof of the delivery of the property to the respondent, and in all, in establishing the trusts on which it is alleged it was delivered. Most of the items are such, as if duly proved to exist, might justly and equitably be set off against the respondent's account, and some of them, in the very terms in which they are charged in said schedule, seem to have been paid, if at all, in reference to some items of that account.

*Bill dismissed.*